## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA A. MEIXNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 12-842 |
| v. | ) | |
| | ) | **ELECTRONICALLY FILED** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

## I.     INTRODUCTION

Barbara A. Meixner ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g),

seeking review of the final determination of the Commissioner of Social Security ("Defendant"

or "Commissioner") denying her application for disability insurance benefits ("DIB") and

supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42

U.S.C. §§ 401 – 433, 1381 – 1383f ("Act").  This matter comes before the Court upon cross-

motions for summary judgment.  (Doc. Nos. 10, 12).  The record has been developed at the

administrative level.  For the following reasons, Plaintiff's Motion for Summary Judgment (doc.

no. 12) will be DENIED, and Defendant's Motion for Summary Judgment (doc. no. 9) will be

GRANTED.

## II.    PROCEDURAL HISTORY

Plaintiff filed for DIB and SSI with the Social Security Administration on April 21, 2009,

claiming an inability to work due to disability beginning March 11, 2008.  (Transcript ("Tr.") at

94-106).  Plaintiff was initially denied benefits on July 23, 2009.  (Tr. at 59 – 68).  A hearing

was scheduled for November 1, 2010. (Tr. at 35 – 57). Plaintiff appeared to testify, and was represented by counsel. (Tr. at 22– 55). A vocational expert also testified. (Tr. at 22-55). The Administrative Law Judge ("ALJ") issued his decision denying benefits to Plaintiff on January 27, 2011. (Tr. at 9 – 17). Plaintiff filed a request for review of the ALJ's decision by the Appeals Council, which request was denied on May 7, 2012, thereby making the decision of the ALJ the final decision of the Commissioner. (Tr. at 1 – 6).

Plaintiff filed her Complaint in this Court on June 21, 2012. (Doc. No. 3). Defendant filed his Answer on September 13, 2012. (Doc. No. 5). Cross-motions for summary judgment followed.

## III.   STATEMENT OF THE CASE

In his decision denying DIB and SSI to Plaintiff, the ALJ made the following findings:

1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2013;
2.  The claimant has not engaged in substantial gainful activity since March 11, 2008, the alleged onset date;
3.  The claimant has the following severe impairments: major depressive disorder, generalized anxiety disorder, degenerative disc disease and degenerative joint disease;
4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1;
5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(a) and 416.967(b) except she requires alternating positions at will. The claimant also retains the mental capacity for simple, routine and repetitive work tasks requiring no more than incidental independent judgment and discretion or changes in work processes. She should avoid interaction with the general public, and requires only incidental interaction with co-workers lasting no more than 1/6th of an 8-hour workday;
6.  The claimant is unable to perform any past relevant work;
7.  The claimant was born on August 26, 1968, and was 39 years old, which is defined as a younger individual age 18-39, on the alleged disability onset date.
8.  The claimant has at least a high school education and is able to communicate in English;

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills;

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform; and,

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 11, 2008, through the date of this decision.

(Doc. No. 6-2 at 12 – 18).

## IV.   STANDARD OF REVIEW

This Court's review is plenary with respect to all questions of law.  *Schandeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F. 3d 43, 46 (3d Cir. 1994).  A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F. 2d 1185, 1190 – 1191 (3d Cir. 1986).  Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted).  As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently."  *Hartranft v. Apfel*, 181 F. 3d 358, 360 (3d Cir. 1999).  "Overall, the substantial evidence standard is a deferential standard of review."  *Jones v. Barnhart*, 364 F. 3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period."  *Stunkard v. Sec'y of Health & Human Serv.*, 841 F. 2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F. 2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions.  He or she must make specific findings of fact.  *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F. 2d 287, 290 (3d Cir. 1983).  The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence.  *Weir on Behalf of Weir v. Heckler*, 734 F. 2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F. 2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule-making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act.  The United States Supreme Court summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly

limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24 – 25 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'r v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F. 3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision.

## V. DISCUSSION

Plaintiff objects to the determination of the ALJ, arguing that the ALJ erred: (1) in disregarding the medical opinion of Plaintiff's treating physicians and consultative physician; (2) in improperly determining Plaintiff's residual functional capacity; (3) in improperly disregarding

5

the testimony of the vocational expert and relying on an incomplete hypothetical question; and, (4) in improperly evaluating Plaintiff's subjective complaints of pain and discrediting Plaintiff's complaints of pain.  (Doc. No. 13 at 17-26).  Defendant counters that the ALJ had substantial evidence that Plaintiff can perform a reduced range of unskilled light work, that the ALJ properly weighed the medical opinions of record, and that substantial evidence supports the ALJ's credibility analysis. (Doc. No. 10 at 10-17).

When rendering a decision, an ALJ must provide sufficient explanation of his or her final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate disability finding.  *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *S.E.C. v. Chenery Corp.*, 318 U.S. 80, 94 (1943)).  The ALJ need only discuss the most pertinent, relevant evidence bearing upon a claimant's disability status, but must provide sufficient discussion to allow the Court to determine whether any rejection of potentially pertinent, relevant evidence was proper.  *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 – 04 (3d Cir. 2008) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000); *Cotter*, 642 F.2d at 706).  In the present case, the ALJ adequately met his responsibilities under the law.

A.    Medical Opinions of Plaintiff's Treating Physicians/Consultative Physician

Plaintiff first argues that there are several reports from Plaintiff's treating physicians which support the conclusion that Plaintiff is disabled.  In support thereof, she cites the June 17, 2009, employability assessment completed by a physician on behalf of the Pennsylvania Department of Public Welfare, wherein it was reported that she was temporarily disabled from June 17, 2009, through June 17, 2010, due to depression and anxiety.  Plaintiff further cites records from her treatment at Mercy Behavioral Health indicating that she had a GAF score of 50 or less (indicating severe limitations in one's ability to do work related activities), from

approximately May 5, 2008, to September 24, 2010.  Additionally, Plaintiff cites the consultative

evaluation by psychiatrist Robert Eisler, M.D., on October 25, 2010, indicating a diagnosis of

severe and chronic depressive disorder with paranoid ideation, generalized anxiety disorder with

pain, low intelligence, social phobia, and agoraphobia.  Dr. Eisler gave her a GAF score of 25

and found her to be unemployable for a year or more.  Finally, Plaintiff cites the Physical

Capacity Evaluation completed by Virk-Dulai, M.D., on October 29, 2010, in which it was

indicated that Plaintiff suffered from fibromyalgia which was not currently controlled.

The Court notes that a treating physician's opinion may be entitled to great weight –

considered conclusive unless directly contradicted by evidence in a claimant's medical record –

particularly where the physician's findings are based upon "continuing observation of the

patient's condition over a prolonged period of time." *Brownawell v. Comm'r of Soc. Sec.*, 554 F.

3d 352, 355 (3d Cir. 2008) (quoting *Morales v. Apfel*, 225 F. 3d 310, 317 (3d Cir. 2000));

*Plummer v. Apfel*, 186 F. 3d 422, 429 (3d Cir. 1999) (citing *Rocco v. Heckler* 826 F. 2d 1348,

1350 (3d Cir. 1987)).  However, "the opinion of a treating physician does not bind the ALJ on

the issue of functional capacity."  *Chandler v. Comm'r of Soc. Sec.*, 667 F. 3d 356, 361 (quoting

*Brown v. Astrue*, 649 F. 3d 193, 197 n. 2 (3d Cir. 2011)).  A showing of contradictory evidence

and an accompanying explanation will allow an ALJ to reject a treating physician's opinion

outright, or accord it less weight.  *Brownawell*, 554 F. 3d at 355.  Moreover, a medical opinion is

not entitled to any weight if unsupported by objective evidence in the medical record.  *Plummer*,

186 F. 3d at 430 (citing *Jones v. Sullivan*, 954 F. 2d 125, 129 (3d Cir. 1991)).  The determination

of disabled status for purposes of receiving benefits – a decision reserved for the Commissioner,

only – will not be affected by a medical source simply because it states that a claimant is

disabled or unable to work.  20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2).  The ultimate question

of "disability" is reserved for the Commissioner's determination.  *Wright v. Sullivan*, 900 F.2d
675, 683 (3d Cir. 1990); 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

Under the Commissioner's regulations, unsupported opinions of "disability" provided by
treating physicians do not qualify as "medical opinions" entitled to consideration.  *Frank v.
Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003); *Luce v. Astrue*, 523 F.Supp.2d 922, 936 (S.D. Iowa
2007); *Earl-Buck v. Barnhart*, 414 F.Supp.2d 288, 293 (W.D.N.Y. 2006); *Wheat v. Barnhart*,
318 F.Supp.2d 358, 364, n. 11 (M.D. La. 2004); 20 C.F.R. §§ 404.1527(d), 416.927(d).  A true
"medical opinion" specifically explains what a claimant can or cannot do in light of his or her
medical condition.  20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  The availability or
unavailability of jobs consistent with a claimant's established abilities and limitations raises a
*vocational* question rather than a *medical* question.  20 C.F.R. §§ 404.1566(e), 416.966(e).  In
*Willis v. Baxter International, Inc.*, 175 F.Supp.2d 819 (W.D.N.C. 2001), the United States
District Court for the Western District of North Carolina explained:

> Absent a showing of vocational expertise, courts, as well as disability
> adjudicators, give little deference to the opinions of medical doctors on the
> ultimate determination of "disability."  While many doctors are willing to sign
> letters drafted by attorneys that the patient/client is completely disabled, those
> opinions carry little weight, and the discussions in the pleadings concerning
> whether a doctor did or did not find plaintiff to be disabled are not critical to
> decision.  It is a doctor's medical findings, however, that are most helpful in
> determining what impairments are interfering with the plaintiff's ability to work.
> Indeed, such medical information is most informative on the issue of severity of
> the impairments.

*Willis*, 175 F.Supp.2d at 832.

The ALJ did not place great reliance upon the opinion of Dr. Jan.  Dr. Jan does not
specialize in mental health (rather is an internist), but on Plaintiff's first visit, wrote a note that
Plaintiff was "temporarily disabled" due to depression and anxiety despite the fact that a mental
status examination was not conducted.  (Tr. at 245-249).  Because this opinion was not supported

by objective medical evidence, the ALJ appropriately found that it is not entitled to any weight.

Likewise, the opinion of Dr. Eisler, that Plaintiff had a GAF score of 25, was made after only

one evaluation and appeared to be based on Plaintiff's subjective complaints, rather than clinical

findings.  Additionally, as the ALJ noted, the opinions of the physicians are contradicted by

Plaintiff's activities of daily living including spending time with her boyfriend, shopping,

cleaning, cooking, and doing laundry and going to doctor's appointment.  As for the opinion of

Dr. Virk-Dulai, that Plaintiff's fibromyalgia is not controlled, the ALJ stated that Plaintiff refuses

to take medication and appears to be adequately controlled with over-the-counter medication and

conservative care and that her decision not to take medicine, for whatever reason, is indicative

that her pain is not as severe as she alleged.  While Plaintiff highlights that she has taken Motrin

800mg and Flexeril to help her sleep, and these medications are prescriptions, rather than over-

the-counter medications as the ALJ stated, this slight misstatement, without more, does not

negate the substantial evidence that exists.  With regard to the opinion of Dr. Virk-Dulai, the

ALJ further noted that there is no indication that she has lost any mobility or that she reported

any significantly decreased abilities in performance of activities of daily living.  As such, the

Court holds that the ALJ satisfactorily supported his determination with substantial evidence.

His decision will not be disturbed.

    B.    <u>Residual Functional Capacity</u>

    Plaintiff contends that the ALJ improperly determined her Residual Functional Capacity.

She argues there is no substantial evidence that she can perform either the physical or mental

requirements of finding no. 5.  Finding no. 5 states as follows:

    5.  After careful consideration of the entire record, the undersigned finds that the
    claimant has the residual functional capacity to perform light work as defined in 20
    C.F.R. 404.1567(b) and 416.967(b) except she requires alternating positions at will.
    The claim also retains the mental capacity for simple, routine and repetitive work tasks

requiring no more than incidental independent judgment and discretion or changes in work processes.  She should avoid interaction with the general public, and requires only incidental interaction with co-workers lasting no more than 1/6[th] of an 8-hour day.

Tr. at 13.

In order to perform light duty work, an individual needs to be able to stand for a total of at least six hours in an eight hour period of time.  The individual would need to be able to occasionally lift 20 pounds and frequently lift 10 pounds.  20 C.F.R. 404.157(b) and 416.67 (b).  While Plaintiff relies on the physical capacity evaluation by Dr. Virk-Dulai, this Court has already determined that the ALJ adequately explained his reasons for his decision not to follow the opinion of Dr. Virk-Dulai.  Additionally, Plaintiff argues that her testimony at the hearing supports a finding that she is not capable of light duty work, because she testified that she needs to lie down for three (3) hours in an eight hour period of time.  Again, the ALJ emphasized that plaintiff's refusal, for whatever reason, to make medication in an attempt to alleviate her symptoms is indicative that her pain was not as severe as she alleged.  As the Commissioner has set forth in its Brief in Support of its Motion for Summary Judgment (doc. no. 10), numerous record facts support the Residual Functional Capacity set forth by the ALJ:

(1) Plaintiff reported diffuse pain throughout her body but was never in acute distress, maintained a full range of motion, had no joint swelling, no synovitis, had normal motor strength, movement, tone, gait, coordination. (Tr. 170, 273, 321, 539, 543, 548).

(2)  Multiple physicians noted that Plaintiff's complaints of pain and weakness were not consistent with her neurological examination.  (Tr. 245, 548).

(3) Numerous objective medical tests were negative and normal including stress echocardiogram, lupus test, Doppler venus test, shift test, Finkelstein test, CPK, and acetylcholine receptor antibody test.  (Tr. 171-178, 273, 299, 302, 553,055, 559).

(4)  Plaintiff declined to take medications to help her alleged pain (including Lyrica and Cymbalta), despite her treating physicians recommendations that she do so.  (Tr. 309, 321, 444, 448-451, 463, 475, 538).

(5)  Despite alleged difficulties interacting with others, her activities of daily living and demeanor evidence that she was "personable and cooperative" with her treating physicians. (Tr. 141-42, 196, 329, 474).

(6)  Plaintiff had issues with non-compliance with physical therapy and was at one time discharged from therapy due to her non-compliance.  (Tr.  219-222, 234-237, 419, 424, 428, 452, 467).

(7)  Plaintiff felt less depressed an anxious after therapy, when using distraction techniques, and when doing arts and crafts.  (Tr. 433, 461, 369).

(8)  Plaintiff's activities of daily living indicate that she can cook, do laundry, do light cleaning, uses public transportation and drive a car.  (Tr. 140-141).

(9)  Despite difficulties with concentration, plaintiff handles her own finances and pays bills.  *Id.*

Upon consideration of the above record evidence, the ALJ reasonably accounted for Plaintiff's functional limitations and confined her abilities to simple, routine, repetitive light work with no more than incidental independent judgment and discretion or changes in the wokrk processes, with an option to alternate positions at will, and with no interaction with the general public, and more than incidental interaction with co-workers.

C.    Vocational Expert/Hypothetical Question

Plaintiff next argues that the ALJ relied on an incomplete hypothetical question to the vocational expert because he "ignored" and did not rely on the testimony of Plaintiff that she

would need to lie down for three (3) hours a day, and the report of Dr. Virk-Dulai.  Questions

posed to a Vocational Expert must "accurately portray the [Plaintiff's] individual physical and

mental limitations," in order to consider the Vocational Expert's testimony as valid regarding a

Plaintiff's ability to perform other employment.  *Schonewolf v. Callahan*, 972 F.Supp. 277, 289

(D.N.J. 1997), citing *Podedworney v. Harris*, 745 F.2d 210 (3d Cir. 1984).   As rehearsed, the

ALJ adequately and appropriated explained his reasons for his decision not to accord weight to

the opinion of Dr. Virk-Dulai, and cited the lack of objective medical evidence to support his

findings.  Furthermore, the ALJ adequately explained his reasons for discrediting Plaintiff's

testimony at the hearing.  The hypothetical therefore, was not incomplete, and there is substantial

evidence to support the ALJ's determination in this regard.

      D.      Subjective Complaints of Pain/Discrediting of Complaints of Pain

Finally, Plaintiff takes issue with the ALJ's alleged "improper" evaluation of Plaintiff's

subjective complaints of pain, and his use of her hearing testimony to claim that inconsistencies

between the testimony and the medical record – in various respects – diminished Plaintiff's

credibility regarding her complaints of pain.  An ALJ should accord subjective complaints

similar treatment as objective medical reports, and weigh the evidence before him/her.  *Burnett

v. Commissioner of Social Security*, 220 F.3d 112, 122 (3d Cir. 2000).  This necessitates a

determination by the ALJ as to the extent to which a claimant is accurately stating the degree of

his or her disability.  *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. §

404.1529(c)).  When medical evidence provides objective support for subjective complaints, the

ALJ can only reject such a complaint by providing contrary objective medical evidence.  *Mason

v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir. 1993).  However, while subjective complaints may

support a disability determination, allegations must be consistent with the objective medical

evidence on record.  *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Burnett*, 220 F.3d at 122.

Here, the ALJ clearly analyzed the record, compared Plaintiff's statements to the record, and found inconsistencies that he believed weakened her credibility – reasonably leading to the conclusion that Plaintiff was exaggerating her claims.  It is the province of the ALJ to make these credibility determinations, and the Court will ordinarily defer to the ALJ's findings.  *Reefer v. Barnhart*, 326 F. 3d 376, 380 (3d Cir. 2003).   Presently, the ALJ's decision rationale provided substantial evidence to support his doubt as to the veracity of Plaintiff's complaints.  The Court will not, therefore, disturb the ALJ's findings.

## VI.    CONCLUSION

Based upon the foregoing, the court finds that substantial evidence supported the decision of the ALJ finding Plaintiff not disabled under the Act.  Accordingly, Plaintiff's Motion for Summary Judgment will be denied; Defendant's Motion for Summary Judgment will be granted; and, the decision of the ALJ will be affirmed.  An appropriate Order follows.

*/s Arthur J. Schwab*
Arthur J. Schwab
United States District Judge

cc/ecf:  All counsel of record.